```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BERNADETTE MARY HOFER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 18-1746 (JBS) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **OPINION** |

APPEARANCES:

Thomas J. Giordano, Jr., Esq.
DISABILITY JUSTICE
One Commerce Square
2005 Market Street, Suite 350
Philadelphia, PA 19103
    Attorney for Plaintiff

Evelyn Rose Marie Protano
Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

    This matter comes before the Court pursuant to 42 U.S.C § 405(g) for review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying the application of Plaintiff Bernadette Mary Hofer ("Plaintiff") for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. Plaintiff, who suffers from

neck pain, insomnia, cervical and lumbar spinal injuries with pain, and migraines, was denied benefits for the period of disability from June 24, 2013, the alleged onset date of disability, through August 26, 2016, the date the Administrative Law Judge ("ALJ") issued a written decision.

In the pending appeal, Plaintiff contends that the ALJ's decision must be reversed and remanded for one sole reason: the ALJ erred in evaluating the severity of Plaintiff's migraine headaches at step two. For the reasons that follow, the Court finds that substantial evidence supports the ALJ's decision to treat Plaintiff's migraines as "non-severe" and will affirm the ALJ's decision.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for SSDI benefits on October 10, 2013, alleging a disability as of June 24, 2013. (R. at 244-46.) The SSA denied Plaintiff's claim on January 9, 2014. (R. at 182-86.) Plaintiff's claim was again denied upon reconsideration on March 8, 2014. (R. at 188-93.) A hearing was held before ALJ Karen Shelton on April 21, 2016. (R. at 114-60.) ALJ Shelton issued an opinion on September 21, 2016, denying benefits. (R. at 98-109.) On December 8, 2017, the Appeals Counsel denied Plaintiff's request for review. (R. at 1-6.) This appeal timely follows.

B. **Personal and Medical History**[1]

Plaintiff was 58 years old on the alleged disability onset date and 61 years old at the time of her hearing before the ALJ. (R. at 116, 119-20, 244-46.) She graduated from high school and completed one year of college. (R. at 121.) For nearly thirty years, Plaintiff worked as a school operations officer for the Philadelphia School District, where she "did banking, [] took care of all the bills, ordered all supplies[,] [d]id shipping, did receiving, and also took care of substitute teachers." (R. at 122.)

In September 2011, Plaintiff suffered a slip-and-fall at work, which resulted in injuries including, as relevant to this appeal, headaches and migraines. (R. at 128-29.) She returned to work later that day and subsequently put in a claim for worker's compensation. (R. at 129-30.) Plaintiff continued to work for almost two more years with some modifications: for example, she had students help her with lifting and received assistance from a non-teaching assistant to carry change to the bank for her. (R. at 134-35.) Plaintiff retired in June 2013 – about six months before qualifying for her full pension – because, after her contract changed and she was asked to take on additional responsibilities, she "just couldn't do it anymore." (R. at 121-22, 130, 136, 139.)

---

[1] Because Plaintiff's arguments relate solely to her migraine headaches, the Court primarily recounts the medical records and opinion evidence pertaining to such complaints and treatment.

3

Plaintiff treated with primary care physician Dr. John Butler, M.D., for various conditions, including her complaints of migraine headaches, several times after the slip-and-fall. (R. 399-411, 477-79.) On April 10, 2013, shortly before Plaintiff's alleged disability onset date, Plaintiff reported she had just switched to Topamax in January 2013 for migraines, but that she was not experiencing headaches at this time, and Dr. Butler assessed her as having "[m]igraine, unspecified with intractable migraine, so stated, without mention of status migrainosus." (R. at 398-99.) At a follow-up in November 2013, Dr. Butler noted that Plaintiff was on prescription medication for migraines per her neurologist. (R. at 395.) On February 17, 2014, Dr. Butler noted that Plaintiff's migraines appeared "stable." (R. at 392.) On May 14, 2014, Dr. Butler noted there was "no active issue" with Plaintiff's migraines (R. at 389) and, on November 9, 2015, Dr. Butler reported that Plaintiff had "no recent issues" with migraines. (R. at 477.)

Plaintiff also treated with Dr. Russel I. Abrams, M.D., a neurologist, on eight occasions between February 4, 2014 and January 26, 2016. (R. at 454, 457, 462, 464, 466, 468, 471, 474.) At their initial neurological consolation on February 4, 2014, Dr. Abrams noted the following:

> [A]t the present time, [Plaintiff] continues to have headaches, which are approximately every other day and constant. She previously had migraine headaches and these headaches are distinctly different from her

4

> migraine headaches. She has neck pain with numbness and tingling in her arms, mid back pain and low back pain and numbness and tingling in her left leg.

(R. at 466.) Plaintiff's initial neurological examination showed no abnormalities and Dr. Abrams diagnosed, among other things, post-traumatic headaches, which he attributed to the September 2011 incident. (R. at 467.) When she returned for follow-up visits in March and June 2014, Dr. Abrams noted that Plaintiff was having "headaches less often," that her "headaches are better," and that "[t]he nortriptyline 50 mg has helped her headaches" (R. at 464-65), although in November 2014, Plaintiff reported headaches averaging two to three times per week. (R. at 457.) Plaintiff subsequently reported her headaches were "doing better" and that nortriptyline helped. (R. at 470, 472, 475.) On January 26, 2016, Dr. Abrams reported that nortriptyline "helps her headaches" and that, while her headaches "have continued," they "are doing better." (R. at 468.)

Between 2013 and February 2016, Plaintiff treated with Pain Specialists, PA, including Dr. Morris Antebi, M.D., and Beth Butterworth, R.N., on several occasions, reported that she had "no headaches." (R. at 412, 415, 418, 421, 426, 428, 484, 487, 489.)

### C. State Agency Consultants

Dr. Isabella M. Rampello, M.D., a State agency medical consultant, reviewed Plaintiff's medical records and assessed her physical residual functional capacity. (R. at 165-69.) Dr.

Rampello opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, could sit (with normal breaks) for about six hours in an eight-hour workday, could frequently balance, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and was limited in reaching overhead. (R. at 166-67.) Dr. Mary McLarnon, M.D., another State agency medical consultant, reviewed Plaintiff's medical records and concurred with Dr. Rampello's opinion as to Plaintiff's physical residual functional capacity. (R. at 174-77.)

### D. Plaintiff's Statements and Activities

In an Adult Function Report dated November 26, 2013, Plaintiff indicated that she was limited in lifting, squatting, walking, and sitting, and that she could only walk for a half mile before needing to wait for her pain to subside. (R. at 281-82.) She mentions only neck, back, and knee pain (id.), and did not mention any limitations due to migraines or headaches in this Report. (R. at 277-84.)

During a hearing held by the ALJ on April 21, 2016, Plaintiff testified that she was unable to work after the alleged onset disability date because of pain in her back, neck, and knee. (R. at 140.) She did not mention migraines or headaches as a reason for her inability to work. (Id.) After Plaintiff testified at

6

length about her impairments (R. at 140-53), the ALJ asked if there was "[a]nything else we haven't talked about that's keeping you from working?" (R. at 154.) Plaintiff said, "No." (Id.)

Regarding her daily activities, Plaintiff explained that, on a typical day, she would eat, do dishes, try to walk for about 15 minutes, lie down, and watch television. (R. at 151, 277.) According to Plaintiff, she was able to take care of herself, prepare simple meals, do light cleaning twice per week for half an hour, and do laundry twice per week for an hour. (R. at 148, 151-52, 279.) She shops for groceries once or twice per month for about an hour and half, can drive a car alone, and handles her own finances. (R at 152, 280.) Plaintiff's hobbies include reading, watching television, and going to the gym and exercising, although she planned to stop attending the gym due to pain. (R. at 149-51.) She indicated she stopped going to the gym or exercising because of back and neck pain. (R. at 281.)

    **E.   Vocational Expert Testimony**

During Plaintiff's hearing in front of the ALJ, the ALJ also heard testimony from Louis Szollosy, a vocational expert. (R. at 155-59.) Based on Plaintiff's testimony, the vocational expert described Plaintiff's past work as a school secretary (DOT 201.362-022), which is classified as a sedentary and skilled position at the SVP-5 level. (R. at 156-57.) The vocational expert opined that a person with Plaintiff's RFC could perform this job as generally

performed in the national economy, but not as Plaintiff had actually performed her past work. (R. at 158.)

### F. ALJ Decision

In a written decision dated August 26, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged onset date of disability and the date of the ALJ's decision because, consistent with Plaintiff's age, education, work experience, and RFC, she could perform her past work as a school secretary. (R. at 107-08.)

At the first stage of the five-step sequential evaluation process, the ALJ determined that Plaintiff had engaged in substantial gainful activity between June 2013 and September 2013, having briefly returned to work during this time, but that her financial records confirmed no earnings after September 2013. (R. at 100.) Accordingly, the ALJ concluded that Plaintiff had not engaged in substantial activity since September 2013. (Id.)

Next, at step two, the ALJ determined that Plaintiff had the following "severe" impairments: degenerative disc disease of the cervical spine and carpal tunnel syndrome. (Id.) The ALJ found Plaintiff's alleged osteoarthritis, obstructive sleep apnea, and insomnia to be "non-severe" because "these conditions are being managed medically, and should be amendable to proper control by adherence to recommended medical management and medication compliance" and "no aggressive treatment was recommended or

8

anticipated for these conditions." (R. at 101.) The ALJ also found that Plaintiff's migraines were "non-severe" (id.), as discussed in Section IV.B., infra.

At step three, the ALJ concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including those set forth in Listings 1.04, 1.08, or 11.01. (Id.)

Between steps three and four, the ALJ determined that Plaintiff possessed the RFC to perform "sedentary work," as defined in C.F.R. § 404.1567(a), except that:

> [She] needs an option to sit for five minutes after half an hour of standing and[/]or walking, [and] stand for five minutes after half an hour of sitting. Further, she can occasionally climb ramps [and] stairs, she cannot climb ladders, ropes or scaffolds, she can occasionally reach overhead, she can frequently balance, occasionally stoop, kneel, crouch and crawl, and she can frequently handle and finger.

(R. at 102.)

In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "also considered opinion evidence." (Id.) Although the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," she concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely

9

credible for the reasons explained in this decision." (R. at 103.) In doing so, the ALJ analyzed the medical evidence in the record with respect to each of Plaintiff's impairments, as well as the opinions of various treating physicians and State agency medical consultants. (R. at 102-07.)

Based on Plaintiff's RFC and the vocational expert's testimony from the April 2016 hearing, the ALJ found, at step four, that Plaintiff was able to perform her past relevant work as a school secretary. (R. at 107-08.) Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from June 24, 2013 through the date of the ALJ's decision. (R. at 108.)

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); see also Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292

(3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, those findings bind the reviewing court, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

**IV. DISCUSSION**

    **A.   Legal Standard for Determination of Disability**

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Plummer, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

11

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment(s) to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Between steps three and four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1545. Step four requires the ALJ to consider whether, based on his or her RFC, the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, at step five the ALJ will consider whether the claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the

claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 1520(g), 404.1560(c).

### B. Substantial evidence supports the ALJ's treatment of Plaintiff's migraines

Plaintiff argues that the ALJ erred in his treatment of Plaintiff's migraines by finding them "non-severe" at step two, and also by failing to include any limitations related to this impairment in formulating Plaintiff's RFC between steps three and four. (Pl.'s Br. at 5-8.) Specifically, Plaintiff argues that the ALJ improperly ignored Dr. Abram's treating notes. (Id. at 6-7.) To the contrary, the Court finds that the ALJ considered all of the relevant medical evidence, including Dr. Abram's treating notes, and, in any event, substantial evidence supports the ALJ's treatment of Plaintiff's migraines.

At step two of the sequential elevation process, the ALJ must "determine whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." SSR 96-3p. For an adult, "[a] severe impairment is one that affects an individual's ability to perform basic work-related activities." Id. "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for

13

rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

Even if the ALJ properly determines that a claimant's impairments are non-severe, however, a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work. Indeed, between steps three and four, the ALJ is required to assess **all** of the claimant's impairments - even ones that are not "severe" - in combination, when making the RFC determination. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). SSR 96–8p is clear about what the ALJ must consider:

> In assessing RFC, the adjudicator **must** consider limitations and restrictions imposed by **all** of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p (emphasis added); see also Soboleski v. Comm'r of Soc. Sec., 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (explaining that a finding of non-severity "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC"). The ALJ must therefore consider all relevant evidence when determining an individual's RFC. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001).

Here, the ALJ recognized that Plaintiff was diagnosed with and treated for migraine headaches but determined that Plaintiff's migraines were "non-severe." (R. at 101.) After considering the relevant medical records, the ALJ found that Plaintiff's migraines caused no more than a "minimal" effect on her ability to meet the basic demands of work activity because, among other reasons, Plaintiff's migraines "are being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." (Id.) In support of this finding, the ALJ explicitly referenced the treating notes of Drs. Butler and Abrams (id.) (citing R. 451, 464-65, 468, 471, 474), which as described in Section II.B, supra, indicate that, after Plaintiff began treatment with Dr. Abrams in early 2014, her headaches occurred less often, were generally "better," and that nortriptyline helped. The ALJ then specifically cited Dr. Butler's February 17, 2014 treatment note, which indicated Plaintiff's migraines were "stable." (Id.) (citing R. at 392.) Finally, the

15

ALJ summarized Dr. Abram's treating records later in the decision. (R. at 106.)

The record indicates that, between February 2014 and January 2016, Plaintiff sought treatment for migraine headaches from Drs. Butler and Adams. The ALJ fully accounted for the treatment notes of both doctors before determining that Plaintiff's migraines were "non-severe." Importantly, Plaintiff did not mention any limitations due to headaches or migraines in her November 26, 2013 Adult Function Report (R. at 277-83), and she did not mention headaches or migraines as a reason for her inability to work at the April 21, 2016 hearing before the ALJ. (R. at 140.) Simply, Plaintiff points to no medical record or opinion evidence relating to her migraines that the ALJ overlooked or failed to account for at step two. Accordingly, and for the reasons described above, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's migraines were "non-severe."

## V.   CONCLUSION

For the foregoing reasons, the ALJ's decision will be affirmed. An accompanying order will be entered.


**March 5, 2019**                       **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                                      U.S. District Judge